IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| EDWARD WESLEY OWENS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 11-0655-CG-C |
| ) | |
| GEORGIA-PACIFIC, LLC, et al. ) | |
| ) | |
| Defendants. ) | |
| ) | |

ORDER ON SUMMARY JUDGMENT

This matter is before the court on multiple motions for summary judgment and partial summary judgment filed by the defendants, Georgia-Pacific, LLC ("Georgia-Pacific"), Georgia-Pacific Brewton, LLC ("GP-Brewton"), and Metso Paper USA, Inc. ("Metso"). Docs. 76, 77, and 78. The court has reviewed the parties' briefs in support and opposition, and the matter is now ripe for review. For the reasons stated below, the court finds that Georgia-Pacific's motion for summary judgment is due to be **GRANTED**; Metso's motion for summary judgment is due to be **GRANTED**; and GP-Brewton's motion for partial summary judgment is due to be **GRANTED**.

I. FACTUAL BACKGROUND

The plaintiff, Edward Wesley Owens ("Owens"), was, at all pertinent times, an employee of Phillips Services Corporation ("PSC"), a subcontractor hired by Metso to chemically clean a steam-generating boiler at GP-Brewton's paper mill in Brewton, Alabama. Doc. 86 at 5; Doc. 76-1 at 2.

1

Owens was a supervisor who had 20 years of industrial cleaning experience and 5 years experience as PSC's safety manager. Doc. 76-2 at 4-6, 11.

The GP-Brewton paper mill has three boilers which generate steam that is used in the mill's manufacturing process. Doc. 86 at 5. The boilers are aligned in a row and are designated Power Boiler #1, Power Boiler #2, and Power Boiler #3. Id. Over time, materials collect or deposit in the tubes or piping of the boilers and decrease their efficiency, requiring periodic chemical cleaning. Id.

In 2010, GP-Brewton hired Metso to design and oversee the chemical cleaning of Boiler #3. Id.; Doc. 76-1 at 3. The Metso employee assigned to the project was Richard Morris ("Morris"), who designed a plan for the cleaning project which included the construction of temporary piping to gain access to Boiler #3's tubing. Doc. 86 at 6-7. Metso did not actually install the temporary piping; instead, GP-Brewton contracted with RMR Mechanical, Inc. ("RMR") to do the installation. Id. at 8. Metso also did not perform the cleaning operation itself, but rather subcontracted the job to PSC. Id. at 6. Under the terms of the subcontract between Metso and PSC, PSC was to supply the labor, equipment and chemicals for the project, with PSC employees operating PSC's equipment at all times. Id. at 8; Doc. 76-2 at 73-76.

Owens arrived at the GP-Brewton mill on the evening of October 2, 2010, to supervise the evening shift. Doc. 76-1 at 4. By this point, PSC had

completed most of the preparatory work for the project, and cleaning operations were scheduled to begin that evening. Id. Owens met with the PSC day shift supervisor to learn what work was still incomplete, and then met with the evening shift crew to discuss remaining tasks that needed to be completed and to conduct the crew safety meeting. Id. Owens also met with Morris, and the two men walked around the vicinity of the project so that Morris could show Owens tasks which needed to be completed before cleaning operations commenced. Id. at 5. As part of this discussion, Owens and Morris walked over to a demineralized water header (the "water header"), which would serve as the water source for the cleaning project. Doc. 86 at 9. The water header was comprised of piping in the shape of an inverted " T " with two access points for water on either end. Id. Morris informed Owens that GP-Brewton had failed to connect a hose ("Hose #1") to the water header as planned because the required connector was unavailable. Doc. 85-1 at 13. Nevertheless, Morris told Owens that connecting the hose "needed to be done" before cleaning operations could commence. Id. A second hose ("Hose #2") which was unrelated to the Boiler #3 project was connected to the opposite access point on the other side of the water header. Doc. 76-2 at 25. Although connecting Hose #1 to the water header was not within the scope of PSC's work on the project, see Doc. 85-1 at 17, Owens told Morris that he had the necessary fitting in his truck, and that he would retrieve it and connect the hose. Id.

3

Owens went to his truck, retrieved the required fitting and appurtenant equipment, and returned to the water header. Doc. 85-1 at 27. Upon his return, Owens saw Hose #1 still lying on the ground next to the water header, and saw that Hose #2 was still connected to the opposite side of the water header with what appeared to be a closed valve. Id. at 25, 29. Unbeknownst to Owens, Hose #2 was connected to Boiler #1, and a valve on that boiler was not properly closed, causing Hose #2 to be pressurized. Doc. 76-1 at 7. As Owens screwed the fitting onto the water header, Hose #2 burst, causing pressurized water to escape, which in turn caused Hose #2 to move around violently. Doc. 86 at 12. Hose #2 struck Owens on the leg and injured him. Id.

Owens filed suit against all defendants on November 21, 2011, and filed a second amended complaint on March 16, 2012. Docs. 1, 17. The second amended complaint states claims against all three defendants for negligence and wantonness, and demands punitive damages. Doc. 17 at 3-6. The defendants each filed motions for summary judgment and/or partial summary judgment on February 1, 2013. Docs. 76, 77, and 78.

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."

4

The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252.  The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001).  In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999).  "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534

(11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 524 (11th Cir. 1994) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rely merely on allegations or denials in [the non-moving party's] pleading; rather, its response …. must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e). "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587,

6

106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal quotation and citation omitted).

### III. METSO PAPER, USA, INC.'S MOTION FOR SUMMARY JUDGMENT

#### A. NEGLIGENCE CLAIM

The parties do not dispute that the relationship between Metso and PSC was a contractor-subcontractor relationship. It is a general rule of Alabama law that "a contractor owes no duty to the subcontractor whom he has employed." Stovall v. Universal Construction Co., Inc., 893 So.2d 1090, 1096 (Ala. 2004) (citing Elder v. E.I. DuPont De Nemours & Co., 479 So.2d 1243, 248 (Ala. 1985); Knight v. Burns, Kirkley & Williams Construction Co., 331 So.2d 651, 655 (Ala. 1976)). However, there are three recognized exceptions to this general rule, including (1) liability for injuries to a subcontractor's employee caused by the contractor's own negligence; id. (citing Knight, 331 So.2d at 655); (2) liability for certain "intrinsically dangerous" work which injures a third person; id. (additional citations omitted); and (3) liability for the contractor's non-delegable duties which are done through an independent contractor. Id.

The first exception -- concerning the contractor's negligence -- is the one at issue in Owens' claim against Metso, and therefore Owens must establish the elements of a negligence claim. Under Alabama law, the elements of a negligence claim are: a duty of care, breach of the duty of care, cause in fact, proximate or legal cause, and damages. Ex parte Harold L.

7

Martin Distrib. Co., 769 So.2d 313, 314 (Ala. 2000) (citations omitted).

### (1.) ELEMENTS OF NEGLIGENCE – DUTY OF CARE

Whether or not a contractor owes a duty of care to a subcontractor depends upon whether the contractor exercised control over the jobsite and/or the manner in which work was performed. Stovall, 893 So.2d at 1097 (citation omitted); Proctor & Gamble Co. v. Staples, 551 So.2d 949, 953 (Ala. 1989) ("we have required that the plaintiff prove that the defendant exercised control over the jobsite and control over the manner in which the work was to be done ...") (additional citations omitted).  Thus, in order to establish the first element of his negligence claim against Metso, Owens must point to evidence in the record which tends to show that Metso exercised control over the job site and/or controlled how the work was performed.

Rather than do this, however, Owens instead states general legal propositions that are not really disputed by any party.  For example, Owens asserts that a contractor is not "immunized from legal accountability" if he "negligently injures a sub-contractor's employee." Id. at 22.  This is an uncontested point which Metso itself stated in its brief. Doc. 76-1 at 17 (citing Stovall, 893 So.2d at 1096).  Metso does not urge "immunization" for its alleged negligence as Owens seems to suggest; instead, it argues that it was not negligent in the first place because it owed no duty to Owens.  See Doc. 76-1 at 8-16.  Owens also restates the three circumstances giving rise to contractor liability discussed by the Stovall court.  Doc. 86 at 23 (citing

8

Stovall, 893 So.2d at 1096; Knight, 331 So.2d at 655). But again, Metso does not dispute that this is the law and Owens' restatement does not move the discussion any further toward a conclusion about whether Metso owed a duty of care to Owens, a threshold requirement for establishing negligence.

Owens also suggests that "[i]t is likely that the Stovall Court would have ruled differently if evidence existed that the prime contractor was involved in and/or participated in setting up [certain lighting equipment] to be used by the workers and/or directed the workers on how to set-up and/or utilize the lights," adding that "[t]he demonstrated actions and/or conduct of Morris are substantial and significant in terms of the injuries sustained by Owens." Doc. 86 at 23-24. Owens' latter point is conclusory because it is entirely without citation to the evidentiary record, providing no clue about what Morris' "demonstrated actions" were and how they establish that Metso controlled the jobsite and/or how Owens performed his work. As for Owens former point, speculating about what the Stovall court "would have" done if it had been presented with different evidence tells the court nothing about the evidence in this case and whether it indicates that Metso controlled the job site or controlled how Owens' work was done.

Owens also cites two inapposite Alabama Supreme Court cases, Tennessee Coal, Iron, & R.R. Co. v. Burgess, 158 Ala. 519 (1908), and Southern Minerals Co. v. Barrett, 281 Ala. 76 (1967), arguing that both demonstrate that "a premises owner and a general contractor owe a duty to a

9

subcontractor's employee not to negligently injure him …" Doc. 86 at 25. Both cases are distinguishable, however. <u>Burgess</u> involved an injured coal miner's negligence claim against the operator of the coal mine where he was injured. <u>Burgess</u> at 521. The Alabama Supreme Court noted that the defendant coal mine operator had not "parted with the control of the part of the mine operated by [plaintiff's employer]…" <u>Id.</u> at 522. Thus, <u>Burgess</u> is only relevant to Owens' case if he can establish a genuine dispute of material fact as to whether Metso controlled the jobsite as did the <u>Burgess</u> defendant. Owens fails to do this.

Similarly, <u>Southern Mineral</u> involved an employee of a subcontractor who was constructing a manhole in a ditch when one side of the ditch collapsed, injuring him. <u>Southern Mineral</u>, 281 Ala. at 78. The <u>Southern Mineral</u> court found that "[t]he defendant, as a general contractor, was in control of and occupied the premises, so far as concerns any question here presented, the same as if it were the owner." <u>Id.</u> at 80. But Owens has not even argued, much less pointed to any record evidence suggesting that Metso was in control of the jobsite as was the <u>Southern Mineral</u> defendant. Thus, <u>Southern Mineral</u> is also distinguishable from the instant case.

The "statement of pertinent facts" portion of Owens' summary judgment brief is the only portion in which Owens cites evidence from the record to support his case. <u>See</u> Doc. 86 at 4-20. Yet none of Owens' citations to the record tend to establish that Metso controlled the jobsite or controlled

10

how Owens' work was done.  For example, Owens testified that Morris identified the water header that would serve as PSC's water source for the evening's work, and quoted Morris as saying "This is the hose that we ran earlier today and we didn't have a connection to finish hooking it up.  Can you make sure this happens?"  Doc. 76-2 at 20-21.  See also Doc. 85-1 at 13 ("he stated that they laid it out today but did not have a fitting to connect it; we need you to get that connected …").  Owens then told Morris that he had the necessary connector/fitting in his truck, and offered to retrieve it and connect the hose.  Id. at 21; see also Doc. 85-1 at 19.  While this testimony does establish that Morris told Owens what to do, it does not establish that he told Owens how to do it; i.e., it does not establish that Morris, as Metso's representative, controlled the manner of the work or the jobsite.  In fact, Owens' testimony tends to suggest the opposite, as this exchange from his deposition demonstrates:

> Q:       So Metso through Morris might tell you *when* to do something or *what* to do.
> OWENS:   Right.
> Q:       But you as PSC decided *how* to do it and analyzed the hazards associated with doing it.
> OWENS:   Right.

Doc. 78-1 at 10 (citing Doc. 76-2 at 33).  The court cannot locate – and Owens has not identified – other testimony or evidence which refutes or contradicts this portion of Owens' own testimony.

11

Thus, the court finds that Owens has not established a genuine dispute as to any material fact regarding whether Metso controlled the jobsite or the manner in which Owens performed his work, and thus whether Metso owed him a duty of care. Accordingly, the court finds that he has not established a <u>prima</u> <u>facie</u> claim for negligence and summary judgment is due to be **GRANTED** in favor of Metso as to this claim.

### B. WANTONNESS CLAIM

In his summary judgment brief, Owens states that he does not oppose granting Metso's summary judgment motion with regard to his wantonness claim and demand for punitive damages. Doc. 86 at 1. Accordingly, the court finds that summary judgment is due to be **GRANTED** in favor of Metso as to Owens' wantonness claim and demand for punitive damages.

### IV. GEORGIA-PACIFIC'S MOTION FOR SUMMARY JUDGMENT

Georgia-Pacific filed a separate motion for summary judgment on Owens' negligence claim (Doc. 78), arguing that the facility involved in the case was owned by GP-Brewton, a subsidiary of Georgia-Pacific which is a separate legal entity. Doc. 78-1 at 1. Georgia-Pacific further asserts that it owed no duty of care to Owens because "[t]here is nothing in the PSC subcontract that reserves to GP … a right to control the manner that PSC carried out its work," and that "[p]laintiff offers no testimony or other evidence that the manner of his work was controlled [by] GP." Georgia-Pacific also argues that "it appears GP is a defendant in this case only

because the incident occurred on the premises of a subsidiary." Id. at 4.

In response, Owens states that he does not oppose granting Georgia-Pacific a "summary dismissal" based upon the fact that Georgia-Pacific did not own or operate the facility where he was injured. Doc. 83 at 2. Despite his concession, Owens seems to want to reserve the question of whether Georgia-Pacific owed him a duty of care. He argues that he "would have proffered a response" on this point if it were not "moot" and asks the court to enter an order "consistent with the statements" in his brief. Id. at 1, 3. However, the court is not interested in what Owens would have argued if circumstances were different, nor is it limited to the four corners of Owens' brief in granting summary judgment to Georgia-Pacific.

What is germane to Georgia-Pacific's summary judgment motion is whether there is record evidence tending to establish a genuine dispute of material fact as to whether Georgia-Pacific owed Owens a duty of care and therefore whether Georgia-Pacific is liable for negligence. See Fed.R.Civ.P. 56(a). Owens' response brief contains no references to such evidence; in fact, he admits that "[i]n light of the completed discovery" Georgia-Pacific operates as a separate legal entity from GP-Brewton and had "no control over the day-to-day operations of the facility" where he was injured. See Doc. 83 at 2. Thus, based on Owens' own statements, there can be no dispute, genuine or otherwise, that Georgia-Pacific did not control the manner in which Owens performed his work, did not control the jobsite, and therefore owed him no

13

duty of care.

As a matter of law, then, Georgia-Pacific is not liable to Owens under a negligence theory of tort. The court finds that Georgia-Pacific's summary judgment motion is due to be **GRANTED**.

## V. GP-BREWTON'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Owens does not dispute GP-Brewton's motion for partial summary judgment (Doc. 77) on his wantonness claim and demand for punitive damages. Doc. 84 at 1-2 ("Owens acknowledges that Georgia-Pacific Brewton is entitled to a partial summary judgment as to any cause of action predicated on a claim of wanton conduct, and thus, that any claim for punitive damages may not be presented to the jury."). Accordingly, GP-Brewton's motion for partial summary judgment is **GRANTED**.

## VI. CONCLUSION

For the foregoing reasons, summary judgment is **GRANTED** in favor of Georgia-Pacific and Metso as to all counts, and partial summary judgment is **GRANTED** to GP-Brewton as to Owens' wantonness claim and demand for punitive damages. The sole remaining claim to be tried is Owens' negligence claim against GP-Brewton.

**DONE** and **ORDERED** this 16th day of April 2013.

/s/ Callie V. S. Granade
UNITED STATES DISTRICT JUDGE